[No. 1575.]

NICHOLS v. CHITTENDEN, EXECUTOR.

ATTACHMENT — RELEASE — FORTHCOMING BOND — SUBSEQUENT PURCHASER.

Where personal property is attached and released under a forthcoming bond as provided in sections 111 and 112 of the code, a subsequent mortgagee or purchaser from the defendant without notice of the attachment, takes the property free from lien of the attachment. BISSELL, P. J., dissenting.

*Appeal from the District Court of Arapahoe County.*

Messrs. CRANSTON, PITKIN & MOORE, for appellant.

Messrs. BICKSLER & McLEAN, for appellee.

WILSON, J.

In order that there may be a full understanding of the issue presented for determination in this cause, it is proper to give a somewhat detailed statement of facts.

VOL. XIV—4

On the ,30th day of July, 1892, the Mosler Safe Company brought suit in the district court of Arapahoe county against the Security Abstract & Rating Company to recover $400 and interest. In aid of the suit a writ of attachment was issued and levied on certain property conceded to belong to the defendant in that action. The facts of the levy and return will be exactly stated. The property in controversy consisted of certain abstract books known as " records," lettered from A to M consecutively, excepting the letters J and K ; eight books known as " rating ledgers," numbered from L to V, G, I and L ; nine books, known as " lot indices," numbered from 1 to 9 inclusive ; a land index No. 1, " tax sale book," and two judgment record books. When the attachment writ came into the hands of the then sheriff, it is shown that he went to the office of the company and took possession of all this property, locking the door and remaining in possession of the office. The levy was exact and sufficient to reduce the property to the custody of the officer and fix the attachment lien, providing all other things were properly done by the sheriff to establish and perfect a lien. After the execution of the writ, and while the property was in the sheriff's possession, the Security Abstract & Rating Company gave a bond in compliance, and in accordance with the terms of sections 111 and 112 of the code. Thereupon the officer made return that he had duly executed the writ by delivering it, leaving a copy with the manager and levying on all the books and office furniture of the defendant at 830 Seventeenth street in the city of Denver, Arapahoe county, Colorado, which were released on the same day and date by the giving of an undertaking as required by law. Thereafter this levy and the execution of this bond, the safe company proceeded with its suit, and on the 5th of November, 1896, obtained judgment against the Security Abstract & Rating Company for $512, and on the judgment the attachment issued was sustained. Thereupon a special execution was issued from the district court of Arapahoe county wherein the judgment was rendered, and delivered to the sheriff, defendant herein.

The writ commanded him to proceed to sell the property levied on in the attachment to satisfy the judgment. In obedience to the commands of the writ, the sheriff proceeded to the office of the plaintiff in this action, Nichols, and seized the property covered by the execution. Nichols then brought replevin against the officer to recover possession.

The facts on which the plaintiff's title rests are these. After the property had been levied on and released by the execution of the statutory bond, and on the 3d day of January, 1894, one Allen Winch loaned the Security Abstract & Rating Company $2,000, evidenced by three promissory notes, one of $400 and two of $800 respectively, and took a chattel mortgage from the Security Abstract & Rating Company on the property which had been antecedently seized by the writ of attachment. Afterwards Winch renewed the mortgage in October, 1894, and April, 1895, each mortgage containing the same covenants as the first, the goods during all this time being in the undisputed possession of the Abstract Company. Thereafter Nichols bought these notes of Winch and there being a default by the mortgagor in the payment of what was due thereon, Nichols took possession of the books, and removed them to his own office. There had been no foreclosure of the mortgage or attempt to sell thereunder, though the assumption of possession was in accordance with the terms and conditions of the mortgage and rightfully taken. As before stated, the sheriff went to Nichols's place of business and seized the books, etc. Thereupon Nichols brought replevin, serving his writ by the coroner; the Safe Company defended by the assertion of its title and lien obtained by the levy of the attachment, and a demurrer to the answer setting up this defense having been overruled, plaintiff replied, and the case went to trial. On the trial the fact and circumstances of the original levy were established by sufficient evidence, and it abundantly appeared that in levying the attachment writ the officer proceeded according to law and assumed the actual custody, control and possession of the property. It was located at the place stated in the return,

was in the office of which the sheriff took possession, and there can be no doubt but that the sheriff made a legal levy. He attached to his return no inventory, but the identity of the property was abundantly proven, and what the sheriff afterwards took on the special execution issued on the judgment recovered by the Mosler Safe Company wherein the attachment was sustained, was that on which he had levied under the attachment writ.

This statement sufficiently discloses the question, whether the lien of an attachment acquired by a sufficient levy of a writ, continues after the execution of an undertaking provided for by code sections 111 and 112, and may be enforced against one who subsequently obtains possession of the property by the enforcement of a chattel mortgage executed by the attachment creditor after the levy but subsequent to the giving of the bond, and while he is in possession, where the mortgagee has no knowledge or notice of the levy, other than what is constructively given him by the pendency of the suit and the knowledge afforded by the papers therein and the return of the officer. The question comes in this exact shape, because the record discloses the fact to be that neither Winch nor Nichols had actual notice or knowledge of the making of the levy and the seizure of the goods, and no other than constructive notice that the apparent owner and possessor had no title. We may go further, and say that broadly stated the question is, does the lien of attachment still continue against property delivered to the defendant by the officer after the execution of the bond required by the code? Does an innocent purchaser or subsequent incumbrancer of such property, take subject to the lien?

On this question an examination of the authorities, either directly in point or bearing upon it in principle, will disclose much conflict. This is not surprising, because attachment being solely a creature of statute, the statutory provisions regulating it are necessarily different to a greater or less extent in all of the states, and in fact in scarcely any are in perfect accord. The question therefore must be considered and

determined almost entirely upon the provisions of our own code, applying to them usual and well settled rules of statutory construction, and not losing sight of fixed principles of law, which should control unless it be clearly manifest that it was the legislative intent that they should not. The code sections which control and which require consideration are as follows:

" Sec. 111. The defendant may at any time release any property in the hands of the sheriff by virtue of any writ of attachment, by executing an undertaking as provided for in the next section, and all the proceeds of sales and money collected by the sheriff, and all the property attached remaining in his hands, shall be released from the attachment and delivered to the defendant upon the justification of the sureties in the undertaking.

" Sec. 112. Before releasing such attached property, as aforesaid, to the defendant, the sheriff shall require an undertaking executed by the defendant to the plaintiff, and at least two sureties, residents and freeholders, or householders, in this state, to the effect that in case the plaintiff recover judgment in the action, and the attachment is not dissolved, defendant will, on demand, redeliver such attached property so released, to the proper officer, to be applied to the payment of the judgment, and that in default thereof the defendant and sureties will pay to the plaintiff the full value of the property so released. The sheriff may fix the sum for which the undertaking shall be executed, and, if necessary in fixing such sum to know the value of the property released, the same may be appraised by three disinterested persons, to be appointed by the sheriff; and if any sheriff shall release any property held by him under or by virtue of any writ of attachment, without first taking such bond as herein required, or shall take an insufficient bond, he and his sureties shall be liable for the value of such property so released."

The language here used is to my judgment clear, unmistakable and unambiguous. In my opinion, there is no doubt but that it was the intent of the legislature that the bond

here required should be substituted as a security for the property itself, and upon the redelivery of the property to the defendant, it was taken without the custody of the law, and became free from the lien of the attachment. It is the duty of a court in construing a statute to give, if possible, force and effect to all of its language, and I cannot see what the words "shall be released from the attachment," mean, unless it be that it shall be released from the lien of the attachment. If this be not true, the words could have been entirely omitted.

It would have been amply sufficient in such case to have said that the defendant may at any time release the property by executing the undertaking required, and thereupon the property should be delivered to the defendant. By inserting these words, it is manifest that the legislature intended to go further than simply releasing the property from the custody of the sheriff. It is by virtue of the attachment that the lien exists. If there is no attachment, there is no lien. If the attachment fails, or is for any reason discharged, the lien falls. If, therefore, the property be released from the attachment, which is the source and sole creator of the lien, it seems utterly untenable to say that it is not released from that which follows the attachment—which is the consequence of it—namely, the lien.

If there were any doubt about this construction of the statute, it would, I think, be entirely removed by a consideration of the nature and objects of attachment, the history of the law in this state, and reference to and analysis of the whole code chapter relating to attachments, and the application to them of rules of statutory construction which are universally recognized.

The bond required by our statute is not in the ordinary acceptation of the term a forthcoming bond. Bouvier defines a forthcoming bond to be "a bond given for the security of the sheriff, conditioned to produce the property levied on when required." This was the character of bond under consideration in many of the authorities cited, to the effect that the defendant in such case is simply a custodian of the sher-

iff, and that the lien of the attachment still continues. Such a bond, as the name indicates and as it was always considered when it originated in the early history of the attachment law, was simply to secure the return to the officer of the identical property which he had seized under attachment, in the event the attachment was sustained, and the plaintiff should secure judgment. It ran to the sheriff or other officer executing the writ, and in such case it could of course be very reasonably contended that the property still remained in *custodia legis;* that the defendant was simply the keeper or receiptor for the sheriff, and that hence, and naturally, the lien still continued. Such was the character of a forthcoming bond allowed in Colorado up to the adoption of the code in 1876, when the sections which we have cited above were adopted. Rev. Stat. 1868, sec. 9, p. 55.

Under our old practice prior to 1876, after seizure of the property, the defendant desiring to release it might give instead of a forthcoming bond what is properly termed a dissolution bond, that is, a bond in sum sufficient to cover the debt and damages sworn to in behalf of the plaintiff, with all the interest, damages and costs of suit, conditioned that the defendant would pay to the plaintiff the amount of such judgment and costs as might be rendered against him in the suit on a final trial. Upon the giving of this bond, the attachment was entirely dissolved. Revised Statutes, 1868, sec. 29, p. 62. When the code was adopted, however, in 1876, the only bond provided for in order to release attached property either from custody or from the attachment, was that specified in code section 112. This is a bond entirely different from either of the others, but possesses some features common to both, in view of which and under the preceding legislation on attachment bonds and of the expressed language of the code, it seems to me that it was the evident intention of the legislature to substitute it in its effects for both of the old ones. Unlike the old forthcoming bond, it does not run to the sheriff. Like the old dissolution bond, it runs to the plaintiff. If the plaintiff should

finally recover judgment, the defendant might surrender the attached property and thereby satisfy the bond. This release from custody alone, however, would not in many cases be sufficient to satisfy the demands of right and justice. It would be unfair to the defendant to require him to give a bond to satisfy the whole judgment, costs and interest which might be recovered against him before he could have the privilege of releasing the property attached, which might be of much less value than the judgment claimed, both from the custody of the sheriff and the lien of the attachment, so that he could avail himself of all his rights of ownership either by sale or by incumbrance. The code therefore provided in terms, that upon the giving of the bond required, the property attached should be released from the attachment. In many cases the privilege if it extended only to the release of the property from custody would be a barren one, because as for instance in the case of cattle, or merchandise, or manufactured articles, the sole object for obtaining a release of the goods or property would be that the party might continue the sale of them as in his ordinary course of business. This he could not do if the lien still attached and continued.

If it was the intent of the statute that the lien should still follow the property, why did it provide that upon the giving of the bond, the money which the sheriff might have in his hands arising from the sale of perishable property attached, should be turned over to the defendant? Surely, it could not be expected that any available lien would remain upon the money.

Again, it is the duty of a court in construing a statute, or any part of it, to consider the whole statute, and if possible construe it in such manner as to harmonize its various provisions. This is very frequently one of the most efficient methods by which the intent of the lawmakers can be ascertained.

In section 112 it is provided that the sheriff shall be liable upon his official bond for the sufficiency of the bond which

he takes under the provisions of that section. Thus the whole object of an attachment is attained. The plaintiff is rendered amply secure, to the extent of the property attached, for the collection of any judgment which he may secure.

Again, in section 108 it is provided that after judgment recovered by the plaintiff, the sheriff shall proceed to satisfy the same out of the property attached by him " which has not been delivered to the defendant or claimant as hereinbefore provided," etc., showing a clear intent thus far not to preserve the lien of attachment upon the property which has been released; and in section 109 it is provided that if after selling all the property attached by him remaining in his hands, any balance shall remain due, the sheriff shall proceed to collect that balance as upon execution in other cases.

I fully appreciate that it is not within the judicial function to declare laws invalid, simply because in the opinion of the courts, the effects may be bad. This is exclusively a matter for the consideration of the legislature, but in construing a statute where the meaning or language is of doubtful import, it is a well settled rule of construction, founded both upon reason and common sense, that it is proper for courts to consider the results and effects of the statute. It is self-evident that this is one of the best methods of ascertaining the intent of the lawmaking power in such cases. It is not to be presumed that a construction was intended which would bring disastrous consequences when another construction could be given which would bring about beneficent results. Applying this rule in the case at bar, what do we find? In Colorado, district courts have jurisdiction coextensive with the boundaries of the state. Suit may be instituted and a writ of attachment issued in La Plata county for instance. Personal property may be seized thereunder in Routt county. The defendant gives the required bond and retains possession of the property; he is still clothed by permission of the law with all indicia of ownership; there is nothing of record in Routt county to show that there is any lien whatever upon the property, and a prospective purchaser could not, by the

exercise of the most extraordinary diligence, ascertain that there was such a lien. Surely it would not be in accord either with justice, reason or right that a purchaser in such case should lose his property by virtue of this, to him, unrecorded and secret lien. Again, suppose that a stock of merchandise in the city of Denver should be seized under attachment and a bond immediately given, the sole object of such a bond is that the party may continue his business, may sell his goods, and receive the money, and yet if the doctrine contended for in this case be true, every purchaser of an article of merchandise from such a store is liable to have it taken from him under this lien. I cannot believe that the legislature ever intended to enact a law under which such flagrant injustice could be inflicted upon innocent people. Courts should, and always have gone to the greatest possible length to protect innocent purchasers, and that spirit and principle pervades the statute laws of every state. Even if the express language which I have cited from the concluding portion of section 111 were not used, I would be of the opinion, considering the whole statute, that the intent was not to continue the attachment lien after the giving of this bond, but the use of that language is conclusive in my opinion and settles every doubt beyond peradventure.

It is urged, however, that this question has been settled by our supreme court, and in support of this we are cited to *Edwards v. Pomeroy*, 8 Colo. 254, and *Stevenson v. Palmer*, 14 Colo. 564. Not much reliance is placed in the argument upon the first mentioned case because it seems to be conceded that the question involved here was not necessarily involved in that decision. Moreover, what the supreme court did say in its opinion in that case is not in conflict with the views which I have expressed in this. It is said in speaking of the statutory undertaking required by code section 112, " The design and effect of such instrument is to release the property attached but not to discharge the attachment." The bond in controversy in the case did not at all conform in its conditions to the requirements of the statute, and was claimed to

be a dissolution bond because its condition was alleged to be that in case the attachment was not dissolved and discharged, and judgment was recovered, the obligors would pay to the plaintiff the amount of the judgment so recovered, not exceeding, etc. It is evident from the connection in which the language occurs that the court used the word " discharge " as synonymous with " dissolve," as it most frequently is in the discussion of the law of attachments. Immediately following this, still referring to the statutory undertaking, the court further said : " The obligation becomes absolute if the attachment be sustained and the plaintiff recover judgment. In such case the property must either be returned to the officer or the value thereof must be paid to the plaintiff." In all this I fully concur, and nothing which I have said conflicts with it. I simply go further and say what was not necessary to be said in that case because the question did not arise, that if the property has in the mean time passed out of the possession of the defendant into that of an innocent purchaser, then the plaintiff must rely upon the bond to satisfy his judgment.

It is insisted, however, that *Stevenson v. Palmer* is, in principle, directly in point. If this were the case, of course we would be bound and concluded by it. I cannot, however, view it in that light. That was a case involving an attachment in a justice court, given under the provisions of section 2015, General Statutes. The bond there required was simply by the terms of the statute for the release of the property. There was no provision as in the code that upon its execution the property should be released from the attachment, and there were no other qualifying sections in the law, as in the code, tending to throw any light upon the intent of the legislature in enacting the statute. It was, therefore, not unreasonable to hold, as was done, that the lien of the attachment having once attached to the property, it could not be divested unless there was some language tending to show such an intent. It is true that the court in that case relied largely upon the condition of the bond, that the defendant

redeliver the property, holding that this was the primary condition and purpose, although the condition was expressed in the alternative, and it is also true that precisely such an alternative condition is required in the bond to be given under code section 112, but the same results do not necessarily follow. The language of the code section does not leave the matter open for doubt, but in my opinion clearly indicates the object and purpose of its provisions. It expressly provides that the property shall be released from attachment. The phraseology is widely different from that in the justice's act, and the other sections of the code to which we have adverted throw still further light upon the intention of the legislature. The supreme court was considering only the case which was before it, and to that extent only are we bound.

The doctrine of *stare decisis* is invoked, however; and we are told that this court has already decided this question adversely to the views which I have expressed. *Schneider v. Wallingford*, 4 Colo. App. 150. This doctrine is a highly important one, and necessary to preserve the consistency of judicial determinations of law, and is not to be lightly disregarded or overlooked. That case was a contest between two attaching creditors in the same court, and might turn upon the consideration of other questions and principles not involved in this case. The facts are entirely different from this, and hence I do not feel called upon to discuss it. There the differences between the code provisions relating to attachment, and the law of attachments in justice's courts were neither raised nor considered. My learned associate who wrote the opinion in the case expressly stated that he relied upon *Stevenson v. Palmer* as having conclusively settled the question before him. It is true that he said, referring to *Stevenson v. Palmer*, "The court holds that the lien cannot be divested by a sale of the property by the attachment defendant," etc., but it can be readily seen that this was an inadvertence and slip of the pen. That question was not involved in *Stevenson v. Palmer*, neither was it in *Schneider v.*

*Wallingford.* It may be said also that it is not involved in the case at bar, but in my opinion there is no difference whatever in the rights of an innocent purchaser from an attachment defendant and an innocent mortgagee. There might be a difference between their rights and the rights of a subsequent attaching creditor in the same court, as was the case in *Schneider v. Wallingford*, but upon this, as I have before intimated, I do not feel called upon to express an opinion until such a case is presented.

In my opinion upon the facts as shown by the pleading and the evidence, plaintiff was entitled to hold the property seized, and hence the judgment herein should be reversed and the cause remanded for further proceedings in accordance with this opinion. Such will be the order.

*Reversed.*

THOMSON, J., specially concurring.

I agree with my brother Wilson that this judgment should be reversed. I am not, however, prepared to yield a full assent to his construction of the statute. The supreme court, in *Stevenson v. Palmer*, 14 Colo. 565, held that personal property attached was not discharged from the lien of the attachment by the giving of a redelivery undertaking in pursuance of the terms of section 2015 of the General Statutes. That section occurs in the act regulating proceedings in justices' courts. In *Schneider v. Wallingford*, 4 Colo. App. 150, where, as in the case at bar, the undertaking was given pursuant to the provisions of sections 111 and 112 of the code, this court reached a like conclusion. Now, while it is conceded that the supreme court decision fixes the law, in so far as attachments issued from justices' courts are concerned, yet, it is argued that on account of a difference in phraseology between the provisions of the justice's act and those of the code, the rule applicable in the two classes of cases is not the same; and that in applying the decision in a case which arose under the justice's act, to one arising under the code,

this court erred.    If the question of the purpose of a rede-
livery undertaking in attachment were now to be determined
for the first time, I should hesitate before disagreeing with
my associate in his construction of the code provisions; but
this court is bound by the decision of the supreme court;
and, unless, in relation to the question under consideration,
the differences between the justice's act and the code are
such as to render the effect of the one different from that of
the other, we committed no error in following that decision.
That the language of the two is not identical, or that in mat-
ters of detail, the one is more specific than the other, is not
enough.    If the meaning to be gathered from each is the
same, the same rule must be applied to both.    A comparison
of the enactments will exhibit their resemblances and differ-
ences, and so lead to a just solution of the question.    The
following is section 2015 of the General Statutes :

"The defendant may, at any time before final judgment in
the action, release all property which may have been seized
by virtue of the attachment writ, by his executing an under-
taking as hereinafter provided.    Such undertaking shall be
given by the defendant to the plaintiff, be signed by two re-
sponsible sureties, each a resident of the county in which the
suit is pending, and shall be to the effect that in case the
plaintiff recover judgment against the defendant in the ac-
tion, and the attachment is not dissolved, the defendant will
deliver to the constable all property which has been seized by
him by virtue of the attachment writ, or, on failure so to do,
will pay to the plaintiff the full value of the property at-
tached, not exceeding the amount of the judgment and costs
recovered in the action."

The code provisions referred to are as follows :

" Sec. 111.    The defendant may at any time release any
property in the hands of the sheriff by virtue of any writ of
attachment, by executing an undertaking as provided for in
the next section, and all the proceeds of sales and money col-
lected by the sheriff, and all the property attached remaining
in his hands, shall be released from the attachment and de-

livered to the defendant upon the justification of the sureties in the undertaking.

"Sec. 112. Before releasing such attached property, as aforesaid, to the defendant, the sheriff shall require an undertaking executed by the defendant to the plaintiff, and at least two sureties, residents and freeholders, or householders, in this state, to the effect that in case the plaintiff recover judgment in the action, and the attachment is not dissolved, defendant will on demand, redeliver such attached property so released, to the proper officer, to be applied to the payment of the judgment, and that in default thereof the defendant and sureties will pay to the plaintiff the full value of the property so released."

Both the enactments provide for the release of the attached property, upon the execution of an undertaking by the defendant to the plaintiff. The undertaking in each case is conditioned that if judgment be recovered by the plaintiff, and the attachment be not dissolved, the defendant will deliver the property to the proper officer, or pay the plaintiff its full value. To this extent the enactments are substantially alike. But language is found in the code sections which does not occur in the justice's act, and it is to be seen how the meaning of those sections is affected by the presence of that language. Code section 111 provides that upon the justification of the sureties in the undertaking, all the proceeds of sales and money collected by the sheriff, and all the property attached remaining in his hands shall be released *from the attachment* and delivered to the defendant. The justice's act simply provides that the property which has been attached shall be released. It does not say that it shall be released from the attachment, and the specification in the code, not contained in the other enactment, that the release shall be from the attachment, seems to be regarded as indicative of an intention by the legislature to give an undertaking, executed under the provisions of the code, an effect not contemplated in the justice's act. It is said that if the release from the attachment is not a release from the lien of the attachment, the

words "from the attachment" are useless, and might as well have been omitted. I do not think the words useless, but I think they express merely what would necessarily be understood without them. The justice's enactment provides only that the property which has been attached shall be released. But from what shall it be released? It has been seized by the constable, and is in his possession. The attachment of personal property, capable of manual delivery, consists in taking it into custody. Gen. Stats. sec. 2007; Civil Code, sec. 104. By the release, the officer relinquishes the possession, and turns it over to the defendant. As the officer attaches the property by taking it into his custody, a release from that custody is a release from the attachment; so that respecting the effect of the release, the code provisions and the justice's act are the same. The code merely expresses in words what the other implies.

But it is insisted that another reason for a difference in the construction of the two enactments is found in the provision of the code, not contained in the justice's act, that upon the giving of the undertaking, all the proceeds of sales and money collected by the sheriff, shall, along with the property remaining in his hands, be released from the attachment, and delivered to the defendant. It is argued that the lien could not follow the money; that as the money and the property are released together, their situation is the same, and, that as the lien would not follow the money, it could not have been intended that it should follow the property. Code section 107 provides for the sale, before judgment, of property of a perishable nature, the proceeds to be held by the officer to answer the judgment. This is the money referred to in code section 111. The justice's enactment contains no such provision. But, as a matter of logic, it does not follow that because the lien upon a portion of the property may be lost, it is divested as to the remainder. Let it be supposed that the code contained no provision for the sale of property before judgment, just as the justice's act does not, and let it further be supposed that part of the property

attached should actually perish in the hands of the sheriff, then, as to that part, the lien would be defeated, but no one would seriously contend that the destruction of a portion of the property would injuriously affect the plaintiff's rights in the residue. Now, that a sale should have an effect which an absolute loss would not, must be predicated upon some reason which has thus far escaped my observation.

Sections 108 and 109 of the code provide that after judgment recovered by the plaintiff, the sheriff shall proceed to satisfy the same out of the property attached by him, which has not been delivered to the defendant; and that if, after selling all the property attached by him remaining in his hands, any balance shall remain due, he shall proceed to collect such balance as upon execution in other cases. It is said that these provisions show a clear intent not to subject the property, which has been released, to the attachment. But in the justice's act (section 2013, Gen. Stats.) it is provided that if judgment be recovered by a plaintiff, the justice shall issue an order of sale to the constable, directing him to satisfy such judgment out of the proceeds of the sale of the property attached by him, and that in case the property attached be not sufficient to satisfy such judgment, then the justice shall issue an execution as in other cases. It is true that this section does not, in terms, direct the satisfaction of the judgment out of property attached which has not been delivered to the defendant, and, in this respect, it differs from the code. But to find what it means reference must be had to the sections which precede it. The subject of those sections is property which has been attached by the constable, and which has not been delivered to the defendant. That is the property, and the only property, which is spoken of prior to section 2013, and is therefore the property of which it speaks. It is not until afterwards that provision is made for a redelivery undertaking. Therefore, in so far as the question now under consideration is concerned, the effect of section 2013 of the General Statutes, and

the effect of sections 108 and 109 of the code, are the same. In my opinion while the code provision and the justice's enactment differ in their language, there is no difference in their purport; the lien acquired by virtue of one is coextensive with the lien acquired by virtue of the other; the same rule of decision should be applied to both, and because the supreme court has decided that the giving of a redelivery undertaking in a suit before a justice of the peace, does not divest the lien of the attachment, it must be held that the lien of an attachment issued by a court of record remains, notwithstanding the giving of the undertaking provided for in the code.

But while I am of the opinion that the execution of the forthcoming bond does not divest the lien of the attachment, I am also of the opinion that the lien binds the property only as against the attachment defendant, and persons standing in his shoes.   One purchasing with actual notice of the lien, or one claiming an interest in the property for which he had parted with no value, would perhaps, be entitled to no more consideration than the defendant himself.   But I do not believe that the lien can be asserted against a purchaser who has no notice of its existence, and here I am in full accord with my learned associate, Judge Wilson.   In *Stevenson v. Palmer*, the property attached had been released by the giving of a redelivery bond, and had afterwards been levied upon by virtue of a writ in another suit.   The court held that the property was still subject to the lien of the first attachment, saying that it would be a fraud upon the sureties to allow it to be subjected to execution issued at the suit of other parties.   In *Schneider v. Wallingford*, the controversy was between prior and subsequent attaching creditors.   In neither case was the question of the rights of an innocent purchaser involved.   In so far as personal property is concerned, an attaching creditor takes his chances upon the title, and if it turns out that there is outstanding a prior and superior right in the property, he sustains no loss.   His position is no worse than it was before. His attachment, therefore, operates only upon the title which

the defendant actually has at the time, and he must submit to the lien of a prior attachment, whether he has notice of its existence or not. *Gates Iron Works v. Cohen*, 7 Colo. App. 341. But the situation of an innocent purchaser is altogether different. He parts with his money on the faith of an apparent title, and if he is deprived of the property by means of some invisible claim, of the existence of which he had nothing to advise him, he suffers serious hardship. The law has in view the encouragement of trade. A doctrine which would render traffic perilous, and overshadow purchasers with a constant danger, from some unknown source, of losing their acquisitions, would be repugnant to enlightened policy. A person desiring to purchase real estate can readily ascertain whether it is subject to the lien of an attachment by inquiring at the office of the recorder of the county in which the land lies. Civil Code, sec. 104. A mortgage of personalty must be recorded with the recorder of the county in which the property is situated, to be of any effect against purchasers without actual notice. 1 Mills' Ann. Stat. sec. 385. And generally, our lawmakers seem to have been careful to provide means whereby parties desiring to become interested in property, may ascertain whether it is incumbered by a lien. But there is no provision for giving notice to the world of the lien of an attachment of personal property. Constructive notice is something of statutory creation, and there is no constructive notice, unless it is authorized by statute. *Bank v. Davidson*, 7 Colo. 91. If a purchaser of attached property has not actual notice of the attachment, or of facts which would charge him with such notice, he has no notice at all. A writ of attachment issues from one county, and is levied in another and remote county; it is then returned to the county from which it came; the defendant executes the proper undertaking, which also goes to the county of the writ; the property is returned to him; the appearances all are that he has a perfect right to deal in the property as he chooses, and a purchaser has no knowledge or means of knowledge that another human being, outside of the defend-

ant, has any claim upon it. The law has designated no place at which he may inquire. He knows where to go to find whether it has been mortgaged, because the statute informs him; but he does not know where to go to find whether it has been attached, because the statute does not inform him. It is contrary to the policy of the law, as well as natural justice, that a purchaser of property should be at the mercy of a secret claim; and if it had been the intention that the lien of an attachment should follow personal property into the hands of a purchaser, provision would have been made for constructive notice of the lien.

But the plaintiff is not hurt by his inability to take the property from the purchaser. He is amply protected by the redelivery undertaking. The sureties are bound for the production of the property to answer his judgment, and if it is not forthcoming, they must pay him its value. And there are no equities in their favor. They executed the bond voluntarily, and by its execution, they put it into the power of the defendant to dispose of the property. The appearance of right, with which he was clothed, to deal with it as he pleased, was due to them, and as between them and a person who is led by a situation which they created, and in innocent reliance upon a title to which they have been instrumental in giving an appearance of validity invests his money in the property, the loss must be borne by them.

In this opinion I have used the word "purchaser" throughout, but the rights of a mortgagee are the same as those of a purchaser, and under the facts as they are disclosed by the record, in my opinion the appellant is entitled to the possession of the property.

BISSELL, P. J., dissenting.

With great regret I am compelled to withhold my assent to either of the opinions announced by my associates. Entertaining as I do profound respect for their views, I should doubtless yield my convictions and assent to the reversal of

the judgment did I not believe that I was bound by the decision of the supreme court, which as I read it logically concludes the question. As will be observed my brother Thomson concurs in my construction of the code provisions, supporting the position by strong and to my mind unanswerable arguments. I should doubtless simply accept his reasoning which may not be at all strengthened by my treatment of the question, but being unable to accept his position on the inapplicability of the statute to the present case, I am constrained to fully express my convictions respecting the whole question. If our conclusions about the provisions of the code are correct, I am quite unable to see any escape from the affirmance of the judgment. Until the supreme court shall reverse the *Stevenson* case I am compelled under my theory of our judicial system to follow it. I insist that case must be reversed to warrant a different result. I do not believe that court can either distinguish or modify it and support such a result by a logical argument which will be satisfactory to the profession.

The statement which is found in Judge Wilson's opinion fully suggests the real and pivotal question, whether the lien of an attachment acquired by a sufficient levy of a writ continues after the execution of a forthcoming bond under the provisions of the code and may be enforced against one who subsequently obtains possession of the property by the foreclosure of a chattel mortgage executed by the attachment creditor after the levy but subsequent to the giving of the bond, and while he is in possession, where the mortgagee has no knowledge or notice of the levy other than what is constructively given him by the pendency of the suit and the knowledge afforded by the papers therein and the return of the officer. The question comes in this exact shape because the record discloses the fact to be that neither Winch nor Nichols had actual notice or knowledge of the making of the levy and the seizure of the goods, and no other than constructive notice that the apparent owner and possessor had no title. Whatever may be or might have been my own view

and opinion respecting this proposition as a general question, as I look at it the case has been so far determined by the supreme court that I can discover no escape from the affirmance of this judgment. The matter has been considered in two separate cases (*Edward v. Pomeroy*, 8 Colo. 254; *Stevenson v. Palmer*, 14 Colo. 565) and in this court in *Schneider v. Wallingford*, 4 Colo. App. 150. In the last case, speaking by me as the president judge, the doctrine of the other two cases was followed and the same rule declared. At the outset it may be well to suggest, because considerable of the argument of counsel for the appellant is based on an attempted distinction between these cases and the present one, that in each of these cases the questions presented were of the respective rights of different attaching or execution creditors against the same common debtor. It is quite true the proposition respecting the rights of an innocent mortgagee, or an innocent purchaser were in no manner presented. It is equally clear the case in the 14th Colorado was based on a construction of the provision of the General Statutes applicable to justices' courts hereinbefore referred to.

At the outset I will dispose of one of the contentions directed to the point that there is a wide difference in the language of section 2015 of the General Statutes of 1883, and the language of sections 111 and 112 of the code. The sole difference between the two is in the use of the words, "the property shall be released from the attachment and delivered to the defendant;" while the phraseology of the justice's act is simply, "that the defendant may release all property which may have been seized by virtue of the attachment writ by executing the undertaking," etc. The language of the code provision is a little broader, and under some circumstances, and with a different provision respecting the bond might possibly exhibit a different legislative purpose. I am unable, however, to discover any distinguishing difference in the language of the two provisions, or think that any controlling force ought to be given to the code provision which is not equally enforcible and applicable in the construction

of the justice's act. I reach this conclusion because the provisions respecting the forthcoming bond, its terms and conditions are precisely the same in the one act as in the other. Since the supreme court rests its conclusions respecting the proper construction of section 2015 on the terms of the bond, I see no escape from the conclusion that the same principle must control the construction of the code enactment. I will now come to a consideration of these antecedent adjudications. I concede the proposition insisted on by counsel that none of the cases are in one sense an exact determination of the question. In *Edwards v. Pomeroy*, where a suit by attachment was begun and the defendant undertook to give a bond to release the property, suit was brought on the bond, and in the complaint there was an attempt to state the bond according to its legal effect. In this the pleader signally failed because there is a wide difference between the bond as pleaded and the bond offered in evidence. In the discussion of the right of the plaintiff to recover on a bond with its expressed conditions thus alleged and thus proven, the supreme court decided the requisites of the bond required by statute. The court conceded the principle insisted on by counsel respecting the purpose and effect of the statutory provision. In the concession the court undertook to state the rule respecting the lien right acquired by the levy of an attachment writ, and the effect of the giving of a forthcoming bond under the code, and stated in precise terms that the object and effect of the instrument was to release the property attached, but not to discharge the attachment. It is quite true this question was not necessarily involved in the decision, but that it was pertinent and germane to the inquiry before the court must be conceded, and I must therefore accept this declaration as the view of the court respecting the proper construction of this statutory provision. When the question was next before the court it was decided by Justice Hayt in *Stevenson v. Palmer*. In that case Whitsett brought suit against Noxon and levied an attachment on the goods in controversy. The property was released by the

giving of a forthcoming bond according to the provisions of section 2015. The goods then went into Noxon's possession and were again levied on in the suit of one *Gaynor v. Noxon*, and in this suit a forthcoming bond was also given. Thereafter the sureties on the bond undertook to bring suit to recover possession of the property in order to prevent the acquisition of a superior lien by the levy of a subsequent writ. The court undoubtedly held that the sureties were in no position to maintain replevin, having no right of possession, and construed this provision of the statute providing for a forthcoming bond after the levy of an attachment writ. As I look at it, this question was involved in the suit, pertinent to the controversy, properly considered, and in no sense are the declarations of the court on the case *obiter*.

In *Schneider v. Wallingford*, the controversy was between two attaching creditors, and following the decisions of the supreme court we reaffirmed the doctrine. It is quite true therein we said the court held that the lien could not be divested either by sale or by seizure or disposition by an officer under process. This in the general sense is true. With respect to the seizure by an officer under a subsequent writ, there is no question; with reference to sale, the principle decided is equally conclusive, though the limitation and exception which is here contended for because of the innocent character of the incumbrance was not under consideration nor expressly decided, though the exception was not noted in the statement of the principle, and therefore counsel very properly insist that *Schneider v. Wallingford* is not conclusive and it must now for the first time be considered.

The whole inquiry turns on the force, extent and character of the lien and the principle on which it rests, and its applicability to the conditions here existing. Counsel attempt to base arguments on the differences between the justice's act and the code provisions, and insist that there are three classes of bonds provided for by the code and the justice's act. It is evident I do not concede this point when I hold that the provisions of the code are the exact equivalent of

the conditions of the act and the bonds in the two cases are precisely the same. Under these circumstances there are but two classes of bonds, one of which has been referred to, and the other being provided for by section 91 of the code. Under section 91 whenever a suit is begun and a writ of attachment issues in aid of it, the defendant may give a bail bond to prevent the levy of the writ and the property never becomes subject to the lien. This is generally called a bail bond, and under all the authorities whenever such a bond is given the *jus disponendi* remains with the attachment defendant. When he has given this bond he may mortgage, sell or dispose of the property as though the writ had never issued because the property has never passed into the custody of the law, the plaintiff has never acquired a lien and the bond stands in place of the property. The other class is the forthcoming bond, and the case remains whether the power of disposition is with the defendant so that he may mortgage it to an incumbrancer who will thereby acquire title superior to the lien which flows from the levy. *Stevenson v. Palmer* discusses the question as to the effect of the giving of a forthcoming bond. The court recognizes the hopeless conflict in the authorities and refers to the Iowa cases and some text writers which lay down the doctrine that there after the giving of a forthcoming bond the property is subject to attachments, levies by execution or to sale as though the property had not been seized. The court then proceeds to cite other authorities and text writers which hold that the giving of a forthcoming bond does not discharge the property. The court adjudges that the alternative condition of the bond provided for by the act which is to redeliver the property to be applied in payment of the judgment, or in default that the defendant or sureties shall pay the full value of the property released to the extent of the amount of the judgment, is a legislative indorsement of the decisions of those courts which hold that the lien continues. The court relies largely on the condition of the bond, that the defendant will redeliver the property and that the purpose of the redelivery is to sub-

ject it to the payment of the judgment, and it is regarded as a fraud on the sureties to permit third parties to defeat a compliance with this condition. The court announces broadly that the better reason and the weight of authority support the doctrine that the attachment lien is not discharged by the giving of the bond. The court undoubtedly puts its decision likewise on the ground that the sureties have no other interest in the property than the right to have it preserved for delivery, and since they had not become liable they had no such title as gave them the right to possession, or to maintain suit against the officer. Counsel of course insist that the latter is the main proposition on which the case turned. Whether this be or be not true, the other is one of the points involved, and the court was compelled to decide what the rights of the respective attaching creditors were, and it was essential to their decision to determine the force and effect of the statute and the results flowing from the execution of such a bond, and we regard its decision on this proposition not as *obiter*, but as legitimate, and the conclusion of course as binding. It still remains to be determined whether the principle therein declared is so far reaching as to be conclusive on the rights of the parties to this suit. I see no escape from this conclusion. The decision declares the principle that the giving of a bond does not release the lien. This result is deduced from the terms and conditions of the bond and the alternative provision that the property shall be redelivered to the officer to satisfy the judgment, providing the attachment is ultimately sustained. When it is decided that the lien remains, in my judgment, it necessarily follows that the lien must be superior to any right acquired by a subsequent mortgagee. There is a wide difference between a lien of this description and that resulting from a contract of parties. The supreme court has undoubtedly held conditional sales void under our statute except under certain conditions. Yet it decided that a conditional sale is perfectly good as between the parties, equally valid and binding as between them and third parties having notice of the condition at-

tached to the transfer, only deciding that the conditional sale is invalid as against those who become purchasers without knowledge of any defects inhering in the apparent owner's title. The principle on which the case rests doubtless is that the vendor has put it in the power of the vendee to mislead innocent parties to their injury. No such principle is here involved. The attaching creditor did not deliver the property to the debtor nor consent to his resumption of possession. The law compelled the release of the property and permitted the resumption of possession by the debtor. The principle thus far does not apply. Neither is it a question of a defense interposed by the sureties when sued, who according to the contention of counsel should not be permitted to interpose this claim because they voluntarily assumed the obligation of the bond and consented to the possession of the debtor. The sureties are not sued. It is a pure matter of right between the attaching creditor and a third party under circumstances which show that the creditor was in no manner a consenting party, that he did not put it in the power of the debtor to mislead or injure the other, but that what was done was done under legal compulsion, by the assertion of a statutory right which he was powerless to prevent, control or interfere with. In the present case, the right is one given by law. It is a lien given whenever a writ is properly issued and exactly executed. It is true the subsequent purchaser has no notice except that afforded by the records. It is likewise true that suits may be begun in any one of the very numerous courts in this county or in any other county in the state, and that the writs and papers may be in widely distant counties, and the doctrine of constructive notice may be inconvenient of application, but I do not understand that the argument *ab inconvenienti* is one which can be used to overthrow a lien given by statute. It is not a thing resting on contract, nor do the facts present a case where one of two parties must suffer and one has put it in the power of the other to do him wrong. The right to give the bond is conferred by the statute, and the effect of

that bond is a matter purely of statutory declaration. If the giving of this bond and the clothing of the defendant with the apparent title resulting from possession works wrong and injustice to third parties, it is a wrong and an injustice worked out by the statute, and is only the subject of legislative correction and not of correction by judicial construction. It would likewise work a fraud on the sureties to hold otherwise. They contract to redeliver the property. A redelivery will protect them from liability. The preservation of the lien and an adjudication that the lien continues is within the spirit of their contract and permits its performance. If it is adjudged there is no lien the law then permits the debtor to defraud his sureties by a sale of the property or its incumbrance and they are remediless. The question is, does the lien remain? If it remains as against subsequent attaching lien and execution creditors, I am quite unable to see why it does not remain as to subsequent incumbrancers or *bona fide* purchasers. Under our statute all interests of the defendant, whether legal or equitable, are subject to levy. If the defendant has an interest which he can sell, or has an interest which he can incumber, I am quite unable to see why his interest which is the subject of sale and incumbrance may not be made the subject of levy either under an execution writ, or under a writ of attachment. The contrary may not be insisted on because in one case there is notice, and in another none, for the execution or the attachment may be in the hands of the successors of those who have made prior levies, or they may be officers in different counties who are without notice and knowledge of the outstanding levy. There is still a further reason and argument to be urged against the contention which is derived from the assertion of the principle that notwithstanding the giving of the forthcoming bond, the lien of the appellant remains and the property is in the custody of the law. According to the cases the possession of the defendant is substituted for that of the officer and his custody is that of the officer. His holding is as much *custodia legis* as is the possession by the officer

or his custodian.    It seems like a contradiction to assert that the lien remains, and yet, to hold that the subsequent purchaser and incumbrancer takes title.    This may be shown by what almost amounts to a *reductio ad absurdum*.    It is a lien, and a lien which remains notwithstanding the giving of the bond.    It remains so long as the defendant holds the property.    It does not remain after he sells or incumbers it. If this be so it is not a lien at all because it is a lien which may be divested by the act of the party against whom the lien has arisen.    It may be defeated by his acts without regard to the rights or wishes of the parties in whose favor it exists.    Again, it is an absolutely valueless lien, if it only be a lien so long as the property remains in the possession of the defendant.    In such case the defendant still holding the property when the original suit goes to judgment, whether the attachment be or be not sustained, the property being unsold and undisposed of, it is the subject of levy, and the plaintiff in the suit has precisely the same rights as though he had never issued an attachment.    The other doctrine absolutely destroys the force and effect of the right and negatives the very idea of a lien.    If to its enforcement it be necessary that the defendant remain in possession, it is a lien without value because the property may be subjected to levy as though no attachment had issued.    The true theory of a lien is the preservation of the right of the plaintiff as against third parties.    As against the defendant his writ is always enforcible whether with or without a lien.    The lien is only indispensable to preserve the plaintiff's rights in case the property passes into the hands of third parties.    How it can be insisted that the lien is destroyed by the forthcoming bond to such an extent that the defendant may sell or incumber it, and yet it be conceded the supreme court is right in holding that the lien of the attachment remains because of the very alternative conditions contained in the bond, is quite beyond my comprehension.

If the lien exists it must be something more than a mere naked right only enforcible when and while the property is

in the defendant's possession. Such a conclusion is wholly variant from the legal right expressed by this term. A lien is in the broadest sense a property right. As put in *Hoeble v. Myers*, 132 B. W. 368 : "Inasmuch as they had only a lien upon it (the fund), and had not completed their title, it is claimed no action will lie for relief. In taking this position, the defendants lose sight of the fact that a lien is property in the broad sense of the word, and although it has no physical existence, it exists by operation of law so effectually as to have pecuniary value, and to be capable of being bought and sold." It cannot be divested or lost save by legal methods or by acts of the party asserting it whereby he has lost it, deprived himself of the legal right to enforce it, or done some act which will in equity estop him from asserting it.

An argument may also be based on the very language of the act itself. Section 112 provides in case the plaintiff recovers judgment and the attachment is not dissolved, the plaintiff will redeliver the property ; yet, according to the argument, the giving of the bond does in all essential respects and in all practical particulars absolutely dissolve the writ. This, of course, is only an added argument supporting the principle laid down by the supreme court that the lien of attachment continues after the bond as well as before.

It seems to me those cases are conclusive of the present controversy, and the principle on which they are based absolutely determinative of the present inquiry. In my opinion the judgment should be affirmed. My associates conclude otherwise and the judgment must therefore be reversed.